CITY OF ARLINGTON

v.

William P. BARDIN et al.

No. 17275.

Court of Civil Appeals of Texas, Fort Worth.

Feb. 11, 1972.

Rehearing Denied March 10, 1972.

Saner, Jack, Sallinger & Nichols, and H. Louis Nichols, Dallas, and Stanley Wilkes, Jr., City Atty., Arlington, for appellant.

McKool, McKool, Jones, Shoemaker & Turley, and Bill Jones and Edward D. Vassallo, Jr., Dallas, for appellees.

## OPINION

LANGDON, Justice.

The appellees, William P. Bardin, et al., filed suit against the appellant, City of Arlington, Texas, for specific performance of a contract to require it to reconvey to them 21.76 acres of land out of a 68.31 acre tract which appellant had previously purchased from appellees. The appellant denied the appellees' right to specific per-

formance, and in the alternative, filed a cross-action to condemn the 21.76 acres which was described by metes and bounds in the appellant's cross-action. The trial court required separate trials of appellees' action and the appellant's cross-action. Each was tried before a jury.

In the appellees' action the jury found that on October 10, 1968, the appellant (1) was not operating a municipal airport on the 21.76 acres in question; (2) had abandoned the 21.76 acres as a part of its municipal airport; and (3) had determined that the 21.76 acres in dispute were not needed for the operation of its municipal airport. Based upon the above verdict an interlocutory judgment was entered ordering the appellant to reconvey "21.74 acres of land, more or less", to the appellees and the District Clerk was ordered to pay to appellant the sum of $8,696.00 (representing $400.00 per acre for 21.74 acres) out of funds deposited by appellees.

In the trial of the cross-action the jury found that (1) the taking of the 21.74 acres ". . . is not for a public use"; (2) such taking ". . . is arbitrary or capricious"; and (3) the 21.74 acres of land has a market value of $98,000.00. At this point the trial court sustained the City's motion to disregard findings (1) and (2) above described. The court then set aside the interlocutory judgment it had previously entered in the appellees' action and entered judgment vesting fee title to the "21.74 acres of land, more or less" (same metes and bounds description as contained in the interlocutory judgment) in the appellant, City, ordering payment by the appellees of $8,704.00 (representing $400.00 per acre for 21.76 acres) to the appellant and allowing the appellees to recover the sum of $98,000.00 from the City, based upon the jury finding No. 3 above described. The appellant's motion to disregard the jury's answers to certain issues on the first trial and motion for judgment non obstante veredicto in connection with appellees' suit were overruled as was appellant's amended motion for new trial.

The appellant has perfected its appeal based upon eleven points of error and the appellees' their cross-appeal based upon a single point of error.

We affirm in part and reverse and render in part.

In order to clarify the issues involved on these appeals the matters and events deemed pertinent are set forth in chronological order in the paragraphs next following. All emphasis by underscoring is ours.

*July 30, 1960*—William P. Bardin, et al., as sellers, and the City of Arlington, as purchaser, executed a contract whereby the sellers agreed to sell to the purchaser two tracts of land described by metes and bounds and consisting of a total of 68.31 acres. Following the usual recitations the following language appears beginning on page 2 of the contract:

"This conveyance, however, is subject to the following special conditions which shall survive the signing of the deed:

"1.

". . . If, at any time prior to the expiration of said eight years, said airport, after having been constructed, maintained and operated for some period of time, is abandoned as an airport, the sellers' preferential right to purchase at $400.00 per acre shall immediately arise and they, their successors or assigns, at their option, shall have the right to such reconveyance for said consideration of $400.00 per acre.

*"In this same connection, if, at any time during the said eight year period, the purchaser or its successors or assigns shall determine that all or any part of the land included in this deed is not needed for the operation of a municipal airport, then the sellers shall be entitled, at their option, to a reconveyance of said parts or portions at the price of $400.00 per acre. Each and all of the provisions hereof pertaining to said reconveyance and preferential right to buy at sellers' option shall be and remain in covenants running with the land binding*

*upon the successors and assigns of the purchaser.*

"Whenever any right to repurchase shall arise in the future, and, in the event said right is exercised, the reconveyance shall be by warranty deed free and clear of any liens and incumbrances to which the land is not subject at the time of the original conveyance from sellers to purchaser (easements and rights held by public utilities excepted); and sellers reserve the right to apply all or a part of the repurchase price to the payment or retirement of any such liens or incumbrance.

"When the preferential right to repurchase and right of reconveyance herein referred to shall arise in the future, sellers their successors or assigns shall exercise their option to repurchase within six (6) months after such preferential right arises . . . ." (The period of eight years begins on July 30, 1960, the date of the contract.)

*September 20, 1960*—Resolution No. 1789 was passed authorizing the "MAYOR AND CITY SECRETARY TO EXECUTE ON BEHALF OF THE CITY OF ARLINGTON THAT CERTAIN PURCHASE CONTRACT DATED JULY 30, 1960, IN WHICH THE CITY OF ARLINGTON AGREES TO PURCHASE CERTAIN PROPERTY IN THE W. D. LACY SURVEY, TARRANT COUNTY, TEXAS, FROM W. P. BARDIN, ET AL.

"BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF ARLINGTON, TEXAS:

". . . the *original copy of said contract being attached hereto and made a part hereof for all intents and purposes, be, and they are hereby in all things accepted and approved and the Mayor of the City of Arlington is hereby authorized to execute said purchase contract for and on behalf of the City of Arlington* and the City Secretary is authorized and directed to attest to same and place the corporate seal thereon."

*October 10, 1960*—William P. Bardin, et al., executed a deed conveying the two tracts of land, consisting of 68.31 acres described in the July 30, 1960, contract of sale, to the City of Arlington, for and in consideration of the sum of $27,324.00, pursuant to the terms of said contract of sale.

It is undisputed that thereafter the airport was constructed, maintained and operated for some period of time on the land above described together with other land acquired for such purpose by the appellant.

*March 21, 1967*—Resolution No. 2838 was passed by the City of Arlington authorizing the Mayor and City Secretary to execute an agreement for the lease of 53.98 acres at the Arlington Municipal Airport to Bell Helicopter Company. The Resolution contained, among other recitations, the following:

"WHEREAS, the City Council of the City of Arlington owns and operates an airport facility known as the Arlington Municipal Airport; and,

"WHEREAS, there is described on the Master Plan of development of said airport a 53.98 acre 'industrial site'; and,

"WHEREAS, *said City Council has determined and does hereby find that by reason of the location, configuration and other material considerations regarding said site, the same is not essential to the aviation needs of said airport; and further, has made application to the Federal Aviation Agency for a concurrence in such finding; and,*

"WHEREAS, said City Council is of the opinion that the establishment of a substantial aviation industrial development on said site is compatible with and beneficial to the operation of an airport adjacent thereto, *said City Council therefore, concludes that the industrial site herein described should be severed from the Arlington Municipal Airport, and the City Council hereby finds and declares that the needs of the City in providing facilities inciden-*

*tal to the Airport do not require such use of the industrial site,* and that it is therefore to the best interest of the City of Arlington that said property be leased for an aviation industrial use. Pursuant to the findings and determinations herein contained, NOW THEREFORE,

"BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF ARLINGTON, TEXAS:

"THAT the Mayor of the City of Arlington is hereby authorized to execute a lease agreement providing the following:
. . . ."

*April 20, 1967*—On this date the appellant executed a 99 year lease of the 53.98 acres to Bell Aerospace Corporation, through its division Bell Helicopter Company, pursuant to the terms of Resolution No. 2838, passed on March 21, 1967.

*May 30, 1967*—The appellees wrote a letter to the Mayor of the City of Arlington designating copies thereof to the City Manager and to the City Secretary. The letter, signed by William P. Bardin et al., appellees, reads as follows: "On July 30, 1960 a contract was entered into by and between William P. Bardin and wife, Joyce B. Bardin; Jesse Carroll Bardin and wife, Ona Faye Bardin; Janie Bardin Hill and husband, Lewis E. Hill, as Sellers, and the City of Arlington, as Purchaser, covering a tract of 34.24 acres and 34.07 acres out of the W. D. Lacy Survey, Tarrant County, Texas. This contract was later partially consummated by the conveyance of the land covered to the City of Arlington by the Sellers.

"We are informed the City of Arlington has determined that approximately 22 acres of the land covered by the contract dated July 30, 1960 is not needed for the operation of a municipal airport and that such 22 acres is not now covered by a subsisting Certificate of Authority or permit from the F.A.A.

"Pursuant to the terms of such contract of July 30, 1960, the undersigned, the Sellers in such contract, hereby exercise our option to repurchase from the City of Arlington approximately 22 acres which has been determined is not needed for the municipal airport. Upon delivery of the deed conveying title, as provided in such contract, we will pay and deliver to the City of Arlington the sum of $400.00 in cash per acre to the City in payment for the reconveyance of said lands.

"Very truly yours

"(Signed as above indicated)"

The 53.98 acres of land severed from the Arlington Municipal Airport by Resolution No. 2838, and leased to Bell Helicopter included 21.74 acres of land, more or less, which was a part of the two tracts of land consisting of 68.31 acres which the appellees had previously conveyed to the City of Arlington by the deed of October 10, 1960. The said 21.74 acres of land, more or less, which constitutes a part of the 53.98 acre tract conveyed to Bell Helicopter is the subject of this appeal. It is undisputed that the exercise of the option was within the eight year period and within the six month period after the preferential right of reconveyance arose.

In, reviewing the exhibits above described and the record as a whole it becomes apparent that the essential and controlling question to be resolved by this Court is whether or not the City of Arlington has determined that the acreage deeded to the City by the appellees, or any part of such land included in the deed of October 10, 1960, is not needed for the operation of a municipal airport. If the question is answered in the affirmative then the appellees are entitled to exercise the option to have a reconveyance of said parts or portions of the land which are not needed for the operation of the municipal airport at the price of $400.00 per acre.

We are not here concerned with the question of whether or not the City of Arlington has a right to lease a portion of its airport. Such a right, under the authori-

ties, would be unquestioned were it not for the July 30, 1960, contract between the City and appellees. But, unfortunately for the City, such a contract does exist. The following authorities cited by the appellant support the right of a city to lease a portion of its airport. City of San Antonio v. Scobey Fireproof Storage Co., 243 S.W.2d 592 (San Antonio, Tex.Civ.App., 1951, no writ hist.); Southwest Texas and Inter. Fly Club v. City of Del Rio, 324 S.W.2d 40 (San Antonio, Tex.Civ.App., 1958, writ ref., n. r. e.); Christopher v. City of El Paso, 98 S.W.2d 394 (El Paso, Tex. Civ.App., 1936, writ dism.); Moore v. Gordon, 122 S.W.2d 239 (Beaumont, Tex.Civ. App., 1938, writ dism.).

The facts presented on this appeal, involving the provisions of the July 10, 1960 contract, renders the above authorities inapplicable.

The Municipal Airports Act, Articles 46d–1 et seq., Vernon's Ann.Civ.St., cited by appellant, has no application to the facts presented on this appeal. The same applies to Article 1269h, Sec. 1 et seq., V.A. C.S., dealing with airport maintenance and operation, and Sec. 10 of Art. 1269j, Vol. 2B, p. 315, Ch. 20, V.A.C.S.

In reading the contract of July 30, 1960, here involved, we find no ambiguities. It appears to clearly state the intention of the parties and such language was approved by the Arlington City Council by its Resolution No. 1789 which was passed on September 20, 1960, with the said contract attached thereto.

In the case of Mills v. Brown, 159 Tex. 110, 316 S.W.2d 720 (1958), the Texas Supreme Court said:

". . . Ordinance No. 89 is not ambiguous. It is plain and intelligible on its face. We therefore have no right to add words to it or take them from it. The same rules apply to the construction of municipal ordinances as to the construction of statutes." Resolution No. 2838 (March 21, 1967) could not lend itself to any interpretation other than that the City of Arlington determined that it no longer needed the property in question as part of its municipal airport. This is one of the conditions contained in the contract upon the happening of which the appellant agreed to reconvey the property in question to appellees.

The language of the Resolution (No. 2838) pertinent to this appeal reads:

"In this same connection, if, . . . the purchaser (City of Arlington) . . . shall determine that all or any part of the land included in this deed is not needed for the operation of a municipal airport, then the sellers shall be entitled, at their option, to a reconveyance . . . ." This language, when considered in connection with the language of Resolution No. 2838 (March 21, 1967), would entitle the appellees to the option of reconveyance of the 21.74 acres covered by the deed of October 10, 1960, because the City did determine that this portion of the land purchased from appellees was not needed for the operation of its municipal airport. In making this declaration, the City, in the same Resolution, beseeched the Federal Aviation Agency for concurrence in its finding that "the same is not essential to the aviation needs of said airport." It would be difficult to choose language for the Resolution which could more effectively put into operation one of the conditions upon which the City agreed to reconvey.

■ In our opinion, under the facts of this case, the appellees were entitled to the option of a reconveyance of the 21.74 acres as a matter of law. The question, however, was submitted to the jury and its answers find ample support in the evidence. Assuming the correctness of our position to this point in time we find that the appellees in exercising their option were entitled to reconveyance of the property and that the interlocutory decree vesting title in them was proper.

■ We find and hold that the trial court was not in error in refusing to hold

as a matter of law that the land in question is being used for municipal airport purposes and that the appellees had no right to the reconveyance of the land. The appellant's first, second, third, fourth, sixth and tenth points of error are accordingly overruled.

By its point five the appellant contends the court erred in overruling its motion to strike field notes attached to appellees' Exhibit No. 5 describing by metes and bounds the property in question. Its points seven and eight contend the judgment of the trial court describing the property in question is not supported by pleadings or evidence. It will be noted that the appellant is making no claim that the description of the property contained in the judgment is incorrect. It likewise makes no claim that the exhibit in question was inadmissible. Basically the complaint boils down to the assertion that the field notes got into the record by accident. The trial court considered appellant's motion, referred to in its point five, as to the circumstances under which Exhibit No. 5 was admitted into evidence. The court overruled the motion and we think it was correct in doing so. The description is identical to that described in the appellant's cross-action. Appellant's points five, seven and eight are overruled.

We overrule appellant's point nine complaining of the court's refusal to admit into evidence a resolution passed by the City Council of the City of Arlington on June 6, 1967, which in effect was saying it did not mean to say what it did say in Resolution No. 2838 which it passed on March 21, 1967.

By its eleventh and final point the appellant claims the court erred in not permitting the witness, James W. Daniels, to take into consideration the Bell lease in testifying as to the market value of the land, using the income approach, to give his opinion as to the value of the property since it is undisputed that the land in question is subject to an outstanding lease in favor of Bell Helicopter Company.

At the time the appellant, by its witness, sought to value the property, subject to the lease, the court made the following ruling on the objection to such testimony:

"At a pre-trial conference earlier, I concluded that since a jury had already found that the City of Arlington had breached the original agreement with the condemnees in this case that they could not now take advantage of that breach and thereby lessen the monies which the Bardins might be entitled to. I have concluded that this case right now must be tried on the theory that the land is raw land and unimproved. So you may go ahead and make whatever bill of exceptions you want to, Mr. Nichols."

At the time the court made the above ruling the property was under an interlocutory judgment to be reconveyed to the appellees as per the June 10, 1960, contract. We overrule appellant's point eleven. Assuming the complaint is valid and the court erred in its ruling such error would be harmless in view of our holding in the case.

We next consider the appellees' single point of error on their cross-appeal in which they assert error on the part of the trial court in disregarding the findings of the jury to the effect that the land taken was not for public use and was arbitrary and capricious.

At this point we are required to examine the facts as they existed at the time of the trial of the cross-action for condemnation of the property in question. In doing so we are confronted with the following undisputed facts:

(1) The property in question was under an interlocutory judgment to be reconveyed to the appellees.

(2) The City is seeking to condemn the land for municipal airport purposes although it had previously determined that the same land was not needed for that purpose and was not essential to its aviation needs.

(3) The City has previously severed the land it now seeks to condemn from its municipal airport.

(4) The land is now occupied under a 99 year lease by a private corporation.

(5) The private corporation is not a party to the condemnation action.

(6) The City has no authority to condemn land for the use of private corporations.

(7) The City has authority only to condemn for a public use or purpose.

Now, under such circumstances, does the City of Arlington have the right or the authority to condemn such land for airport purposes? We think not. Tod v. Massey, 30 S.W.2d 532 (Galveston, Tex.Civ.App., 1930, no writ hist.); Brazos River C. & Reclamation Dist. v. Harmon, 178 S.W.2d 281 (Eastland, Tex.Civ.App., 1944, ref., w. m.); City of Wichita Falls v. Thompson, 431 S.W.2d 909 (Fort Worth, Tex.Civ. App., 1968, ref., n. r. e.); and Franklin County Water District v. Majors, 476 S. W.2d 371 (Texarkana, Tex.Civ.App., 1971). Under the authorities this Court is unable to condone the action of the appellant in its efforts to invoke its powers of condemnation for the benefit of a private corporation. It is obvious that with a 99 year lease on the property it will not be available for use as a municipal airport for some time to come. The significant fact that Bell Helicopter was not named as a party defendant in the cross-action seeking condemnation of the property in question has been previously noted. Bell Helicopter and not the City municipal airport officials would be in control of the property. Such property will under the facts be devoted to private purposes as opposed to serving any public purpose. Under the facts presented by this appeal, the property will not be available for public use for a period in excess of ninety years.

We have no doubt that the sole purpose of the officials of the City of Arlington and the members of its Council in handling the affairs here involved was to serve the best interests of the public and the community served by them. This Court, however, is confronted with the duty of measuring the conduct and actions of the City officials presented on this appeal by the rules of law which appear to us to be applicable to such conduct and actions.

In applying applicable law to the facts of this appeal, we feel compelled to sustain the appellees' point of error on their cross-appeal.

Hopefully the paragraph next following will explain the discrepancies, reflected by this opinion, in reference to the acreage involved on this appeal.

The acreage involved on this appeal is by the pleadings, the two charges of the Court, the letter of May 30, 1967, written by the appellees to the Mayor of Arlington exercising their option, and in other papers of the record referred to as approximately 22 acres, 21.76 acres, more or less, or as 21.74 acres of land, more or less. All such references refer to the acreage which is the subject of this appeal. The inconsistent references to the acreage have not been questioned by either the appellant or the appellees. In the interlocutory decree the court ordered the appellees to pay to the appellant the sum of $8,696.00, which figure would represent $400.00 per acre for 21.74 acres. The final judgment rendered by the court finds that the City of Arlington is due the sum of $8,704.00, which represents $400.00 per acre for 21.76 acres. The field notes attached to the appellant's cross-action are identical to those contained in appellees' Exhibit No. 5 above complained of and in the court's interlocutory judgment and its final judgment. It has been previously noted that the accuracy of the field notes above described and contained in the interlocutory judgment and the final judgment of the court is unchallenged by either the appellant or the appellees.

Based upon what we have said to this point and the authorities cited in support

thereof, we reverse the final judgment of the court rendered May 12, 1971, by which it set aside its interlocutory judgment of June 24, 1970, and ordered that title to the land in question be vested in the City of Arlington on payment of $98,000.00, awarded by the jury in the appellant's cross-action for condemnation, and we here render judgment for the appellees which generally will conform to the June 24, 1970, interlocutory judgment rendered by the Court.

In order that the judgment herein reversed and rendered may be performable without further proceedings in the trial court we "shall proceed to render such judgment or decree as the court below should have rendered, . . . ." Rules 434, 435 and 436, Texas Rules of Civil Procedure. See also Moore v. Kirgan, 250 S.W.2d 759 (El Paso, Tex.Civ.App., 1952, no writ hist.); Miers v. Clark, 253 S.W.2d 941 (Dallas, Tex.Civ.App., 1952, no writ hist.); and Vol. 7, Tex.Jur. Forms, 7:304 at page 360.

In line with the authorities above cited it is accordingly ordered, adjudged and decreed by the Court that the appellant, City of Arlington, be and it is hereby ordered to execute its deed with general warranty conveying to the appellees, William P. Bardin and wife, Joyce B. Bardin; Jesse Carroll Bardin and wife, Ona Faye Bardin; and Janie Bardin Hill and husband, Lewis E. Hill, that certain tract or parcel of land situated in Tarrant County, Texas, and being part of the W. D. Lacey Survey, Abstract No. 929, and being more particularly described as follows:

COMMENCING at the northeast corner of the said W. D. Lacey Survey, Abstract No. 929; THENCE south 3520.1 feet to a point for corner; THENCE west 1779.5 feet to an iron pin for corner; THENCE north 89 degrees 25 minutes west 174.6 feet to the beginning of this tract to be described; THENCE south 11 degrees 58 minutes east 53.8 feet to an iron pin for corner; THENCE south 53 decrees 02 min-

utes west 1278.3 feet to point for corner; THENCE north 89 degrees 25 minutes west 593.3 feet to a point for corner; THENCE 0 degrees 13 minutes west 834.1 feet to a point for corner; THENCE south 89 degrees 25 minutes east 1605.9 feet to place of beginning, and containing 21.74 acres of land, more or less, and that within thirty days from the filing of the mandate in the trial court, it deliver said deed to the Clerk of the District Court of Tarrant County, Texas, for delivery by the Clerk to appellees. The said Clerk shall thereupon pay to appellant the sum of $8,696.00, representing $400.00 per acre for 21.74 acres, less all costs in this cause incurred, which costs are adjudged against the appellant, and the remaining $304.00 of the $9,000.00 deposited by appellees shall be returned to the appellees; provided that if appellant, City of Arlington, fails to deliver such deed within said thirty day period, then this decree shall operate as a conveyance with general warranty of the described property from appellant, City of Arlington, to appellees, William P. Bardin and wife, Joyce B. Bardin; Jesse Carroll Bardin and wife, Ona Faye Bardin; and Janie Bardin Hill and husband, Lewis E. Hill.

It is further ordered, adjudged and decreed that the appellant, City of Arlington, take nothing by its cross-action against the appellees for condemnation.

The final judgment of the court is reversed and the above judgment is rendered in lieu thereof.

## OPINION ON MOTION FOR REHEARING

In its motion for rehearing the appellant for the first time contends that Bell Aerospace Corporation, through its division, Bell Helicopter Company, is an indispensable party to this suit and cause of action and that since it is not a party to the suit this Court is therefore without jurisdiction to render judgment in this cause.

The jurisdiction of the Court over indispensable parties to a cause of ac-

tion is essential to the court's right, power or authority to proceed to judgment. Proceeding in the absence of an indispensable party, being fundamental error, may be raised for the first time by the complaining party in its motion for rehearing.

The facts in each case determine whether or not an indispensable party has not been joined as plaintiff or defendant in a suit. This determination is made in conformity with the provisions of Rule 39, T. R.C.P., and the authorities cited in connection therewith.

The record reflects that the appellees as plaintiffs did in their first amended original petition name the appellant, City of Arlington, and the Bell Aerospace Corporation, through its division, Bell Helicopter Corporation, hereinafter called "Bell," as defendants.

Bell filed its original answer to plaintiff's first amended original petition which consisted of a general denial.

By written order signed on July 22, 1968, the court granted plaintiffs' (appellees) motion for non-suit as to the defendant, "Bell Aerospace Corporation, through its division, Bell Helicopter Company." The motion and order were not opposed by the appellant.

Bell was not named as a defendant in the plaintiffs' (appellees) second amended original petition which was filed on July 25, 1968.

The record reflects that the appellant did not at any time in its pleadings, including its cross-action or amended cross-action, make any attempt to bring Bell into the case.

■ We find and hold that under Rule 39, Bell Helicopter is not an indispensable party because it does not have a "joint interest" in the title to the land in question and no judgment was sought against it by the parties to this suit. It therefore was not error to proceed to judgment in its absence as a party. Petroleum Anchor Equipment, Inc. v. Tyra, 406 S.W.2d 891 (Tex.Sup., 1966); Oak Park Trust & Sav.

Bank, Oak Park, Ill. v. O'Byrne, 457 S.W. 2d 277 (Tex.Sup., 1970).

Another point urged by the appellant in its motion for rehearing is that it is unable to specifically perform under the terms of the contract involved in this suit because it does not have good or full title to the property in question. This assertion is based on the undisputed fact that the property in question is subject to a valid lease and therefore because of this the appellant is unable to execute a warranty deed.

■ This is not a viable complaint. At the time suit was filed against the appellant the title to the land in question was vested in it. The fact that such land was encumbered by the lease to Bell does not lessen or nullify the title which was vested in appellant. It, therefore, is able to transfer such title.

Because the other matters raised by the appellant in its motion for rehearing were fully discussed in our original opinion we will forego further discussion at this time.

The appellant's motion for rehearing is overruled.