ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

October 17, 2008

The Honorable Wayne Smith
Chair, Committee on County Affairs
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0672

Re: Whether the Cedar Bayou Navigation District may regulate structures on and near Cedar Bayou in certain circumstances (RQ-0702-GA)

Dear Representative Smith:

You tell us that property owners along the Cedar Bayou are considering developing a "container-on-barge facility" within the boundaries of the Cedar Bayou Navigation District (the "District").[1] You ask about the District's power to regulate or establish a permitting system for "structures on and near Cedar Bayou" that "may affect water transportation activities within the District." Request Letter, *supra* note 1, at 1. You specifically ask us to confirm

> that the Cedar Bayou Navigation District under the broad powers granted to it by the [L]egislature, the constitution, and the laws of this state may proceed with enacting reasonable regulations pertaining to permitting and/or regulating of structures on and near Cedar Bayou within the District's boundaries to the extent that the same (i) may affect water transportation activities within the District; (ii) are incident to or accommodating of commerce or navigation; and/or (iii) are incident to or necessary in the proper operation and development of ports and waterways.

*Id.* at 3.

The District's express statutory powers provide sufficient authority to regulate structures or establish a permitting system. *See Tri-City Fresh Water Supply Dist. No. 2 v. Mann*, 142 S.W.2d 945, 946 (Tex. 1940) (stating that a district created under article XVI, section 59 may exercise only those powers that the Legislature has "expressly delegated to it" or that are clearly and

---

[1]Letter from Honorable Wayne Smith, Chair, Committee on County Affairs, Texas House of Representatives, and Honorable Tommy Williams, Texas State Senate, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Apr. 21, 2008) (on file with the Opinion Committee, *also available at* www.texasattorneygeneral.gov) [hereinafter Request Letter].

unquestionably implied from the express powers). In particular, the District's enabling act provides express authority to "regulate wharves, piers, docks, fleeting areas, land, roadways, and other structures and facilities incident to or accommodating of commerce or navigation."[2] The phrase "incident to" means "closely related to" or "naturally appearing with." *Sharp v. Park 'N Fly of Tex., Inc.*, 969 S.W.2d 572, 575 (Tex. App.—Austin 1998, pet. denied) (quoting BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 430 (2d ed. 1995)). We find no judicial definition of "accommodating," but "accommodating" in common usage means "fitting in with" the demands of something. THE NEW OXFORD AMERICAN DICTIONARY 10 (2001); *see* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005) ("Words and phrases shall be . . . construed according to the rules of grammar and common usage."). Consequently, consistently with its enabling act, the District may regulate all structures and facilities that are closely related to or fit in with commerce or navigation. *See* Act of May 17, 2007, *supra* note 2, § 4, at 4659.

And Water Code section 63.153(2)–(3) provides the District with "all powers relating to regulation of . . . facilities connected with waterways and ports inside the district to the fullest extent consistent with the Texas Constitution" and power to "regulate . . . improvements [and] facilities . . . incident to or necessary in the proper operation and development of ports and waterways in the district." TEX. WATER CODE ANN. §§ 63.153(2)–(3), 62.101(1), (3) (Vernon 2004).[3] Thus, the District has additional express authority for regulating facilities that are connected with waterways or ports or that are "incident to or necessary in the proper operation and development of ports and waterways." *Id.* § 63.153(2)–(3).

Assuming, therefore, that the container-on-barge facility is "incident to or accommodating of commerce or navigation," is "connected with waterways and ports," or is "incident to or necessary in the proper operation and development of ports and waterways," the District has express authority to regulate it. *Id.*; Act of May 17, 2007, *supra* note 2, § 4, at 4659. Whether the container-on-barge facility about which you ask is such a structure or facility is a question requiring the resolution of fact issues that is not amenable to the opinion process. *See* Tex. Att'y Gen. Op. No. GA-0446 (2006) at 18 ("Questions of fact are not appropriate to the opinion process.").

Furthermore, as a matter of law, the District's broad authority to regulate such structures or facilities necessarily implies authority to establish a permitting scheme with respect to those

---

[2]*See* Act of May 19, 1997, 75th Leg., R.S., ch. 589, § 6, 1997 Tex. Gen. Laws 2054, 2058 (original enabling act), *amended by* Act of May 17, 2007, 80th Leg., R.S., ch. 1365, § 4, 2007 Tex. Gen. Laws 4657, 4658–59 (adding section 6(a-1)(1)–(3) to act) [hereinafter Act of May 17, 2007].

[3]You cite Water Code section 60.071 as providing the District with "general rule-making authority." Request Letter, *supra* note 1, at 3. Section 60.071 authorizes the commission of a district that "owns, operates, and maintains wharves, docks, piers, sheds, warehouses, and other similar terminal facilities which are not located inside the boundaries of any incorporated city, town, or village" to adopt ordinances, rules, or police regulations that are "necessary to protect the property and to promote the health, safety, and general welfare of persons using the property." TEX. WATER CODE ANN. § 60.071 (Vernon 2004). We do not know whether the District owns, operates, and maintains any of the facilities listed in section 60.071. *See generally* Request Letter, *supra* note 1. Consequently, we do not base our decision upon this provision.

facilities. *See Walling v. Kimbrough*, 365 S.W.2d 941, 945 (Tex. Civ. App.—Eastland), *aff'd*, 371 S.W.2d 691 (Tex. 1963) (stating that where a statute delegates authority to a political subdivision in general terms, the political subdivision has discretion to determine the manner in which it will exercise its delegated power).[4] Any such permitting scheme must, of course, comport with the District's regulatory power and other law. *See* TEX. WATER CODE ANN. § 63.153(2)–(3) (Vernon 2004) (authorizing the District to regulate "facilities incident to or accommodating of commerce or navigation" within the District, facilities connected with waterways and ports inside the District, and improvements and facilities "incident to or necessary in the proper operation and development of ports and waterways" in the District); Act of May 17, 2007, *supra* note 2, § 4, at 4658–59; *see also, e.g.*, TEX. CONST. art. I, §§ 3a, 19 (requiring equality under the law and due process of law).

---

[4]*Cf.* TEX. WATER CODE ANN. § 63.178(f) (Vernon 2004) (suggesting that a district has authority to grant "revocable licenses or permits" for certain purposes although the statute provides no express authority to do so); Tex. Att'y Gen. LO-98-064, at 1–2, 6–7 (concluding that the Franklin County Water District's authority to regulate recreational and business privileges on a lake encompasses authority to require certain permits).

## S U M M A R Y

The Cedar Bayou Navigation District may regulate structures on and near Cedar Bayou to the extent that they may affect water transportation activities, are incident to or accommodating of commerce or navigation, or are incident to or necessary in the proper operation and development of ports and waterways. The District's authority encompasses authority to establish a permitting system.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee